105 S.W.3d 104 (2003)
In the Interest of C.N.S., a Child.
No. 10-02-250-CV.
Court of Appeals of Texas, Waco.
April 2, 2003.
*105 James R. Jenkins, Waxahachie, for Appellant/Relator.
David Kurt Abbott, Katrina K. Walker, Waxahachie, for Appellee/Respondent.
Before Chief Justice DAVIS, Justice VANCE, and Justice GRAY.

OPINION
BILL VANCE, Justice.
Kelly Sutherland, mother of three-and-a-half year-old C.N., filed a petition to terminate the parental rights of John Colston, C.N.'s father. John was at that time, and still is, an inmate of a Texas prison after being convicted of home burglaries. Kelly and John had never married. Grounds for termination were that (a) John left C.N. with another, did not provide adequate support for C.N., and remained away for at least six months, and, (b) as a result of John's criminal conduct, he had been imprisoned and unable to care for C.N. for at least two years before the date of the filing of the termination proceeding. Tex. Fam.Code Ann. § 161.001(1)(C), (Q) (Vernon 2002). After a bench trial, the court terminated John's parental rights, stating in the Order of Termination that it found support by clear and convincing evidence for termination under both grounds and that termination was in C.N.'s best interest.
John appeals, complaining that the evidence is factually insufficient to support termination under subsection "Q" and to support a finding that termination is in C.N.'s best interest. John has not raised sufficiency of the evidence under subsection "C." See Tex.R.App. P. 38.1(e). Thus, because termination can be based on either ground, we need not address his sufficiency-of-the-evidence complaint under "Q," and we will confine our review to whether termination is in the best interest of C.N. See In re J.M.C.A., 31 S.W.3d 692, 696 (Tex.App.-Houston [1st Dist.] 2000, no pet.).
Termination of parental rights involves an application of a two-pronged test. There must be a predicate act which violates one of the provisions listed in the Family Code, and termination of the parent-child relationship must be in the best interest of the child. Tex. Fam.Code Ann. §§ 161.001, 161.206(a) (Vernon 2002). The petitioner must justify termination by clear and convincing evidence of each of the two prongs. Id.; In re G.M., 596 S.W.2d 846, 847 (Tex.1980). In an attack on factual sufficiency of the evidence under the clear and convincing standard, the court of appeals will overrule the issue if all the evidence in the record is such that a reasonable factfinder could form a firm belief or conviction that grounds exist for termination under Texas Family Code sections 161.001 and 161.206(a). In the Interest of J.F.C., 96 S.W.3d 256, 264 (Tex.2002) (citing In the Interest of C.H., 89 S.W.3d 17, 18-19 (Tex.2002)).
There has always been a strong presumption that the best interest of children is usually served by preserving the parent-child relationship. Wiley v. Spratlan, 543 S.W.2d 349 (Tex.1976); e.g., Swate v. Swate, 72 S.W.3d 763, 767 (Tex.App.-Waco 2002, pet. denied); In re M.A.N.M., 75 S.W.3d 73, 77 (Tex.App.-San Antonio 2002, no pet.). To determine whether the presumption has been overcome, and in applying the "firm belief" standard, we consider factors which the Texas Supreme *106 Court has recognized in determining when termination is in a child's best interest. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex.1976). The factors are not exhaustive, nor must all of them be proved before parental rights may be terminated. In the Interest of C.H., 89 S.W.3d at 27. Applying the Holley factors to the testimony at the termination hearing shows:
1. The desires of the child: C.N. was too young to express a desire about the matter. The evidence does not support a conclusion that there was an emotional bond between her and John.
2. The emotional and physical needs of the child now and in the future: There was no evidence of special emotional or physical needs of C.N. other than those normally associated with a child. There was no emotional bond between John and C.N., although John testified he loved C.N. and wanted a parental relationship with her. John had an inconsistent employment history, most recently lived with his brother, and had made only a minimal financial contribution to C.N. over the years.
3. The emotional and physical danger to the child now and in the future: John was incarcerated when C.N. was born. He admitted he had been addicted to using illegal drugs, and he had been convicted twice of burglary of a habitation which he committed to get money to buy drugs. An initial incarceration in a nine-month prison drug-rehabilitation program had ultimately failed to rehabilitate him, and after release from prison, he had been reincarcerated after returning to drug abuse and committing more burglaries. These events occurred before and for over a year after C.N. was born.
4. The parental abilities of the individuals seeking custody: Both parents are young with no advanced education or specialized job skills. Kelly and C.N. had lived with Kelly's parents most of the time since C.N.'s birth, and Kelly had been a responsible parent while raising C.N. John had a longstanding drug-addiction problem which had led to felony convictions and repeated incarceration.
5. The programs available to assist these individuals to promote the best interest of the child: Drug treatment is available to John in prison.
6. The plans for the child by these individuals or by the agency seeking custody: Kelly was engaged to be married in two months. They planned to move to her fiancé's home town. Her fiancé had established a "wonderful" relationship with C.N., and adoption had been seriously discussed. John's incarceration will continue probably four or five more years.
7. The stability of the home or proposed placement: Kelly had a fiancé with whom she had made future plans for a home and family. John had an inconsistent employment history and most recently had lived with his brother. C.N. had no contact with John's parents, because John and his parents had been estranged in the past because he stole from them. John testified he was now on better terms with his parents.
8. The acts/omissions of the parent which may indicate that the existing parent-child relationship is not proper: John had a history of drug abuse and criminal acts which had led to his incarceration for much of *107 C.N.'s life. He had not established a relationship with C.N. of any consequence, although he testified he had tried. After release from his first incarceration and being given the opportunity to establish a relationship with C.N., in less than a year he returned to drug use and criminal activity. He had made only a minimal financial contribution to C.N. over the years.
9. Any excuse for the acts/omissions of the parent: John expressed regret for his past and a desire in the future to parent C.N. and contribute toward her well being. He blamed his past conduct on drug addiction. C.N.'s guardian ad litem corroborated John's claim of remorse.
The trial court had evidence with which to weigh C.N.'s future with a biological father who had a history of drug addiction, was incarcerated for multiple home burglaries, had no established record of the ability to earn a living and establish a home, and had never had a significant relationship with C.N., against C.N.'s future in a home with her biological mother and potential adoptive father in a new town with grandparental support. Based on all the evidence, including the disputed evidence, we find that a reasonable judge could have formed a firm belief or conviction that terminating John's parental rights was in C.N.'s best interest. In the Interest of J.F.C., 96 S.W.3d at 264; In the Interest of C.H., 89 S.W.3d at 18.
We affirm the Order of Termination.