Opinion filed September 2,
2010

 

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-09-00296-CV

                                                    __________

 

                           IN
THE INTEREST OF J.M.D., A CHILD

 

 

 

                                   On
Appeal from the 318th District Court

 

                                                          Midland
County, Texas

 

                                                 Trial
Court Cause No. FM 47,895

 



 

                                            M E M O R A N
D U M   O P I N I O N

 

            This is an
accelerated appeal of the trial court’s order terminating parental rights.  We
affirm. 

I. 
Background Facts 

            Appellant
is the father of J.M.D.  C.R. is the mother of J.M.D. and M.L.R.[1] 
M.L.R. was removed from C.R.’s care when she and appellant left M.L.R. in a
motel by herself while they went to Odessa.  M.L.R. was ten years old at the
time.  On the way to Odessa, appellant was stopped by police and was arrested
for an expired driver’s license.  C.R. was later arrested for child
endangerment.  J.M.D. was born while C.R. was incarcerated, and she was placed
in the custody of the Texas Department of Family and Protective Services.  J.M.D.
was placed in foster care with Lee and Laronda Shirley three days after she was
born.  J.M.D. was sixteen months old at the time of trial.

            The
Department filed a Petition for Protection of a Child, for Conservatorship, and
for Termination in Suit Affecting Parent-Child Relationship.  In the petition,
the Department alleged seven acts or omissions as the basis for terminating appellant’s
parental rights to J.M.D.  The trial court held a bench trial pertaining to the
termination.  At the conclusion of the trial, the court found that termination
of appellant’s parental rights was in the best interest of J.M.D. and that appellant
had:

                 
8.2.1. engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the
child;

 

                 
8.2.2. constructively abandoned the child who has been in the permanent or
temporary managing conservatorship of the Department of Family and Protective
Services or an authorized agency for not less than six months and: (1) the
Department or authorized agency has made reasonable efforts to return the child
to the father; (2) the father has not regularly visited or maintained significant
contact with the child; and (3) the father has demonstrated an inability to
provide the child with a safe environment; 

 

                 
8.2.3. failed to comply with the provisions of a court order that specifically
established the actions necessary for the father to obtain the return of the
child who has been in the permanent or temporary managing conservatorship of
the Department of Family and Protective Services for not less than nine months
as a result of the child’s removal from the parent under Chapter 262 for the
abuse or neglect of the child.

 

II. 
Issues on Appeal

            Appellant
asserts that the trial court’s order finding that he has endangered J.M.D.,
constructively abandoned J.M.D., or acted in violation of the court’s orders was
not supported by legally and factually sufficient evidence.  Appellant also
asserts that the trial court’s finding that termination was in J.M.D.’s best
interest was unsubstantiated by clear and convincing evidence.  

III. 
Standard of Review

Due
process requires that the grounds for termination be established by clear and
convincing evidence.  In re J.F.C., 96 S.W.3d 256, 263 (Tex. 2002).  This
requires a measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegations
sought to be established.  In re J.P.H., 196 S.W.3d 289, 292 (Tex.
App.—Eastland 2006, no pet.). 

To
determine if the evidence is legally sufficient, we review all the evidence in
the light most favorable to the finding to determine whether a reasonable trier
of fact could have formed a firm belief or conviction that its finding was true. 
City of Keller v. Wilson, 168 S.W.3d 802, 817 (Tex. 2005); In re J.F.C.,
96 S.W.3d at 266; In re J.P.H., 196 S.W.3d at 292.  We must assume that
the factfinder resolved disputed facts in favor of its finding if a reasonable
factfinder could do so.  Phillips v. Tex. Dep’t of Protective &
Regulatory Servs., 149 S.W.3d 814, 817 (Tex. App.— Eastland 2004, no pet.). 
We must consider all the evidence, not only that which favors the verdict.  In
re J.P.B., 180 S.W.3d 570, 573 (Tex. 2005). 

To
determine if the evidence is factually sufficient, we review the entire record,
including evidence in support of and contrary to the judgment, and give due
consideration to evidence the trial court could have found to be clear and
convincing.  In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). We then determine
whether the evidence is such that a factfinder could form a firm belief or
conviction that grounds for termination exist.  Id.  We also
consider whether any disputed evidence is such that a reasonable factfinder
could not have resolved that disputed evidence in favor of its finding.  Id.


IV. 
Grounds for Termination

A
court may order the termination of the parent-child relationship if it finds by
clear and convincing evidence that a parent has engaged in conduct or knowingly
placed the child with a person who engaged in conduct which endangered the
physical or emotional well-being of the child.  Tex. Fam. Code. Ann. § 161.001(1)(E) (Vernon Supp. 2009).  Endanger
means to expose to loss or injury or to jeopardize a child’s emotional or
physical health.  Doyle v. Tex. Dep’t of Protective & Regulatory Servs.,
16 S.W.3d 390, 394 (Tex. App.—El Paso 2000, pet. denied).  The conduct must be
more than a threat of physical injury or the possible ill effects of a
less-than-ideal family environment.  However, it is not necessary that the
conduct be directed at the child or that the child actually suffer injury.  Id.  

The
cause of the danger to the child must be the parent’s conduct alone, as
evidenced not only by the parent’s actions but also by the parent’s omission or
failure to act.  Doyle, 16 S.W.3d at 395; In re S.H.A., 728
S.W.2d 73, 83-84 (Tex. App.—Dallas 1987, writ ref=d
n.r.e.).  The conduct to be examined includes what the parent did both before
and after the child was born.  Dupree v. Tex. Dep’t of Protective and
Regulatory Servs., 907 S.W.2d 81, 84 (Tex. App.—Dallas 1995, no writ).  Additionally,
termination must be based on more than a single act or omission; a voluntary,
deliberate, and conscious course of conduct by the parent is required.  In re
K.M.M., 993 S.W.2d 225, 228 (Tex. App.—Eastland 1999, no pet.).  Imprisonment
is a factor to consider on the issue of endangerment.  Tex. Dep’t of Human
Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  However, imprisonment by
itself it is not enough to constitute engaging in conduct that endangers the
emotional or physical well-being of the child.  Id. at 533-34; In re
M.D.S., 1 S.W.3d 190, 199 (Tex. App.—Amarillo 1999, no pet.).  On the other hand, if the
evidence, which includes imprisonment, shows a course of conduct which has the
effect of endangering the physical or emotional well-being of the child, a
finding of endangerment is supportable.  Boyd, 727 S.W.2d at 533-34; In
re M.D.S., 1 S.W.3d at 199.  Conduct that subjects a child to a life of
uncertainty and instability endangers the physical and emotional well-being of
a child.  In re A.J.H, 205 S.W.3d 79, 81 (Tex. App.—Fort Worth 2006, no
pet.).  

Appellant was incarcerated at the time of trial and for a
large portion of the case.  He was arrested in Odessa for driving with an expired
driver’s license in March of 2008.  In May 2008, one month after J.M.D.’s
birth, appellant was arrested in Sweetwater for unauthorized use of a motor
vehicle and was in jail until September 2008.  In February 2009, appellant
pleaded guilty to unauthorized use of a motor vehicle and received a fifteen-month
sentence.  Appellant testified that he has spent “quite a bit” of his life in
jail.  He has a criminal history in Kentucky for theft, theft by deception, and
forgery by passing.  Appellant has been arrested in Texas for driving with an expired
driver’s license and unauthorized use of a motor vehicle.  Appellant testified that
he has “had about eight or ten expired licenses.” 

Jerry Watts testified that he is an assistant jail
administrator and jail sergeant for the Nolan County sherriff’s office.  He testified
that appellant was in the Nolan County jail from May 2008 to September 2008.  Watts
testified that, while appellant was in jail, he received disciplinary lockdown
for disrespect of staff, terroristic threat, fire in his cell, and violent
behavior.  Watts testified that appellant became angry when he was unable to
control the situation in his environment and would break into a rage.

Appellant testified that, when he was not incarcerated, he
was in continuous contact with the Department.  He testified that he signed a
service plan while he was in prison and that he was aware that the Department
was requesting that he participate in certain services offered by the
Department.  Appellant was not incarcerated from September 2008 through
February 2009.  During that time period, he failed to participate in any of the
services offered by the Department. Appellant stated that he failed to perform any
services because he was not required to do them until after taking a DNA test
to confirm paternity.  Appellant’s DNA sample was taken on November 18, 2009,
and the results were returned January 28, 2010.  However, once the DNA test confirmed
that appellant was J.M.D.’s father, he still did not initiate services. 
Appellant was signed up to take a parenting class but he refused to take it because
he did not know what it was for.  Appellant testified that he did not think
that he needed to take a parenting class.  Appellant had not taken a parenting
class at the time of trial but his name was on a waiting list.  Appellant
admitted he was not be able to take care of J.M.D. at the time of trial.  He
further testified that he had not provided any financial support for J.M.D. and
that he was behind in child support for his other children.

Joanna Petrov testified that she is a supervisor for the
Department.  She testified that appellant signed a service plan and the
services were explained to him by a caseworker.  She further testified that
appellant only completed one of the services in his plan, the parenting
packet.  Petrov stated that appellant’s own actions delayed the DNA test
because appellant did not give the Department a proper address where he could
be served.  Appellant gave the address of Joe Cook Small Engine Repair out of
Odessa.  When someone from the Department tried to serve appellant, they were
told that appellant did not work there.  Appellant testified that officially he
did not work there because he did not have a valid driver’s license.  Petrov
testified that appellant had listed his address as “general delivery” in
Sweetwater, Texas.  In order for the Department to order a DNA test, appellant
had to provide a physical address.  Petrov testified that appellant did not
provide locating information even though he was asked numerous times. Petrov
also testified that appellant’s conduct endangered J.M.D.  She testified that
appellant repeatedly made bad choices that put him in prison.  Because of these
choices, appellant was not able to provide J.M.D. with a safe and stable
environment.

Mallori Mangus testified that she is a licensed
professional counselor in private practice who contracts with Hope for Tomorrow
to provide counseling to children.  She was qualified as an expert witness by
the trial court.  She testified that she began seeing M.L.R. as a patient in
July 2009.  Mangus testified that M.L.R. made an outcry of sexual abuse against
appellant.  She also testified that M.L.R. expressed feelings of anger and
hatred toward her mother and appellant.  Mangus testified that M.L.R. told her
that her mother and appellant used drugs in front of her.  Illegal drug use and
sexual abuse are conduct that endangers a child’s physical and emotional
well-being.  In re L.C, 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004,
no pet.); In  re D.C., 128 S.W.3d 707, 716 (Tex. App.—Fort Worth
2004, no pet.).  Evidence of abuse of one child is sufficient to support a
finding of endangerment to another child, even when the child is unborn at the
time of the abuse.  In re King, 15 S.W.3d 272, 276 (Tex. App.—Texarkana 2000,
pet. denied).

Appellant denied ever sexually abusing M.L.R.  He testified
that he had “a pretty good idea” as to why M.L.R. would make those accusations. 
He notes that Mangus never reported the sexual abuse allegation to the authorities. 
She assumed that the Department had notified the authorities.  Appellant
further notes that the State did not file charges of sexual abuse against
appellant and that M.L.R. was not interviewed by the child advocacy center.  Mangus
testified that she did not believe M.L.R. had been coached and that her story
had been consistent throughout her sessions.  The trial court conferred with M.L.R.
in chambers and was able to observe her demeanor and appearance and determine
her credibility.

Applying the standards set out above, we find that the
evidence is legally and factually sufficient to support the trial court’s finding
of endangerment under Section 161.001(1)(E).  Appellant was incarcerated at the
time of trial and during most of the course of this case.  He admitted
that it was his fault that he was in jail, that he continually drove without a
valid driver’s license, and that he knew he might be arrested.  The trial court could have also considered the allegations
of sexual abuse and drug use.  The trial court is the judge of the witnesses’
credibility.  It could have resolved the conflicting evidence in favor of
Mangus and M.L.R.’s testimony and chosen to disbelieve the testimony of
appellant.  Because there is legally and factually sufficient evidence of
endangerment and because only one finding alleged under Section 161.001(1) is
necessary to establish grounds for termination, In re D.M., 58 S.W.3d
801, 813 (Tex. App.—Fort Worth 2001, no pet.), we do not need to discuss the
other findings the trial court made as grounds for termination.  We overrule
appellant’s first issue on appeal.  

V.  Best Interest of a Child

In
parent-child termination proceedings, there is a strong presumption that the
child’s best interest is usually served by keeping him with his natural
parents.  In re D.M., 58 S.W.3d at 814; In re K.C.M., 4 S.W.3d
392, 393-95 (Tex. App.—Houston [1st Dist.] 1999, pet. denied).  Best interest
does not require proof of any unique set of factors.  Holley v. Adams,
544 S.W.2d 367, 372 (Tex. 1976).  However, the Texas Supreme Court has
recognized several factors to consider in determining whether termination is in
a child’s best interest.  Id.  These include:  (1) the desires of
the child; (2) the emotional and physical needs of the child now and in the
future; (3) the emotional and physical danger to the child now and in the
future; (4) the parental abilities of the individuals seeking custody; (5) the
programs available to assist those individuals to promote the best interest of
the child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent that may indicate the existing parent-child
relationship is not proper; and (9) any excuse for the acts or omissions of the
parent.  Id. at 371-72.  This list of factors is not exhaustive,
and no single consideration is controlling.  In re D.M., 58 S.W.3d at
814.

            A. 
The Desires of the Child.

            The emotional bond between the child and the
parent may be considered when determining the best interest of the child.  In
re C.N.S., 105 S.W.3d 104, 106 (Tex. App.—Waco 2003, no pet.).  When the
child is too young to express a preference, other evidence regarding the child’s
current placement is relevant.  See In re M.D.S., 1 S.W.3d at 200 (evidence
that child acknowledged her foster parent as her mother and was well-adjusted
and happy in her foster home was sufficient to find in favor of the Department on
this factor).  Appellant has never seen J.M.D. and has not established an
emotional bond.  At the time of trial, J.M.D. was sixteen months old and had
lived with the Shirleys since she was three days old.  Petrov testified that J.M.D.
thinks that the Shirleys are her parents and that they are the only family she
knows. 

            B. 
The Emotional and Physical Needs and the Emotional and Physical Danger to
the Child Now and in the Future.

 

            A parent’s inability to provide adequate care for
the child, lack of parenting skills, poor judgment, and repeated instances of
immoral conduct can be considered when looking at the best interest of a
child.  In re C.A.J., 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no
pet.). Appellant testified that he was convicted of passing bad checks, theft
by forgery, and theft by deception.   He was also serving prison time for unauthorized
use of a motor vehicle at the time of trial.  Appellant has used poor judgment
in the past and repeatedly acted immorally.  Appellant has not provided any
evidence as to how his conduct will change if able to maintain his parental
rights to J.M.D.  Appellant testified that he did not believe that he needed to
take a parenting class and that he did not believe that it was emotionally
damaging to a child for a parent to be in and out of prison.  Appellant also
testified that as of the date of trial, he was not able to provide a home for J.M.D. 
An inference may be made that a parent’s past inability to provide for a
child’s physical and emotional needs may indicate an inability to provide for
those needs in the future.  D.O. v. Tex. Dep’t of Human Servs., 851 S.W.2d
351, 356 (Tex. App.—Austin 1993, no writ). Appellant’s testimony gives every
indication that his previous conduct would continue because he did not believe
that it was harmful to J.M.D.  

C. 
The Parental Abilities of the Individuals Seeking Custody.

            There is no evidence of appellant’s parental
abilities because he has never seen J.M.D. Appellant refused to take the
parenting class when offered to him initially and had not taken parenting class
at the time of trial.  He also testified that he did not believe that he needed
to take a parenting class.  Appellant has not provided any financial support
for J.M.D. and is behind in the child support owed for his other children.

            Lee and Laronda Shirley are seeking to adopt J.M.D.
and M.L.R.  J.M.D. has lived with them since she was three days old.  The
Shirleys also have three older children and have made J.M.D. and M.L.R. a part
of their family.  The Shirleys have extended family in their hometown, and the
girls are part of their family.  Both Petrov and the guardian ad litem, Barbara
Whittaker, testified that it would be in the children’s best interest for the
parents’ rights to be terminated and adopted by the Shirleys.

            D.  Programs Available to Assist Individuals
to Promote the Best Interest of the Child. 

            Appellant has not taken part in any of the
services provided by the Department and, in fact, saw the services as
unnecessary.  Appellant testified that he did not need to take a parenting class
and he did not need to attend counseling.  The Shirleys have availed themselves
of the Department’s services.  They have encouraged M.L.R. to attend counseling,
which has helped her develop a relationship with J.M.D.  Laronda testified that,
in the beginning, she was dissatisfied with the level of care and supervision
that the Department provided.  However, now she feels like the Department is
doing everything that they are supposed to be doing.  She also testified that
both J.M.D. and M.L.R. are receiving all the services that they need.

E.    
The Plans for the Child by the Individuals Seeking Custody. 

            Appellant testified that he was not able to
provide a home for J.M.D. at the time of trial because he was incarcerated.  Appellant
asked the court to place J.M.D. with his brother and sister-in-law, Tom and
Connie Davis.  The Davises initially only made plans to have J.M.D. in their
home.  They completed a home study and added an extra room to their home for J.M.D. 
However, the Department did not recommend placement with the Davises.  The
Davises had no relationship with J.M.D., and the Department was unable to
confirm that a bedroom had been added to their house for J.M.D.  The Davises
were willing to have M.L.R. live with them but expressed concerns because of
the accusations M.L.R. made of sexual abuse.  They also did not have a home
study completed in regard to M.L.R. or a room prepared for her.  Petrov
testified that the Department believed that it would be in J.M.D.’s and M.L.R’s
best interest to place them together.  Appellant testified that he did not
believe that the children needed to stay together and did not feel that the
sibling bond was important at all.




 

F. 
The Stability of the Home or Proposed Placement.

            The Shirleys are seeking to adopt both J.M.D. and M.L.R.  J.M.D.
and M.L.R. are considered part of the Shirleys’ family.  Whittaker testified
that J.M.D. is thriving in her environment.  She further testified that J.M.D.
and M.L.R. are bonded as sisters and that M.L.R. has made great improvements
since being in the Shirleys’ care.  Petrov testified that the bond that a child
forms with her primary caregiver in the first year of life is very important.  She
further testified that, when you remove a child from the person they have
bonded with, many children will develop an attachment disorder.  Petrov
testified that, when children remain with the foster parents from birth and are
adopted, an attachment disorder typically does not become an issue.

G. 
The Acts or Omissions of the Parent and any Excuses for the Acts or Omissions. 

            Appellant has been in jail over half his adult
life.  He has been in jail most of J.M.D.’s life.  He has not developed a bond
with J.M.D. and has not even met her.  Appellant testified that the Department told
him that he could not have any contact with J.M.D.  He testified that he was
unable to see J.M.D.’s mother and J.M.D. at the hospital when she was born.  The
parties stipulated that C.R.’s name was not on her hospital door when she delivered
J.M.D.  Appellant further testified that the Department did not offer him
services until after he had taken a paternity test even though he acknowledged
that he was J.M.D.’s father from the beginning.  While these excuses may
explain why appellant was unable to develop a relationship with J.M.D., they
did not account for his course of conduct that has made him make poor decisions
in his life and spend a great portion of it in jail.  

            Looking at all the evidence and analyzing the
above listed factors, we find that the trial court’s finding that termination
was in J.M.D.’s best interest was supported by clear and convincing evidence. 
We overrule appellant’s second issue on appeal. 

VI.  Conclusion

            We affirm the judgment of the trial court. 

 

 

                                                                                                RICK
STRANGE      

                                                                                                JUSTICE

September 2,
2010

Panel consists of:  Wright, C.J.,

McCall, J., and Strange, J.









                [1]D.M.M. is the father of M.L.R. and his rights were
terminated, but he is not appealing that order and is not a party to this
appeal.  C.R.’s rights were terminated as to both J.M.D. and M.L.R.  She also
is not a party to this appeal.