NUMBER
13-10-00132-CV

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

                                                                      

 

IN THE INTEREST OF R.E.S.
III, J.D.S. AND A.E.S., CHILDREN

                                                                      

 

On appeal from the 36th District Court 

of San Patricio County, Texas.

                                                                  

 

MEMORANDUM OPINION

 

 Before
Chief Justice Valdez and Justices Rodriguez and Benavides

                      Memorandum
Opinion by Justice Benavides

 

In this case involving the
termination of parental rights, appellant, D.C., brings four issues on appeal. 
By her first three issues, D.C. argues that there was legal and factually
insufficient evidence to prove that:  (1) termination of parental rights was in
her children’s best interests; (2) she knowingly placed or allowed her children
to remain in conditions or surroundings which endangered their physical or
emotional well-being; and (3) she engaged in conduct or knowingly placed her
children with persons who engaged in conduct which endangered their physical or
emotional well-being.  D.C.’s fourth issue complains that the Texas Department
of Family and Protective Services (the “Department”) failed to make a
reasonable effort to return her children to her.  We affirm.

I. Background

            D.C. is the mother of R.E.S. III, a five-year
old boy, and J.D.S., a three-year old boy.[1] 
Her children’s father is R.S., who is married to A.S.[2]
 This appeal arises from a
hearing wherein the trial court terminated D.C.’s parental rights of R.E.S. and
J.D.S.  

The record shows that D.C.’s first
involvement with the Department occurred in November 2006.  The Department
initiated an investigation of D.C. and R.S. upon receiving a complaint that
they were neglecting R.E.S. and J.D.S. and using drugs.  As a result of the
Department’s investigation, D.C. signed a voluntary placement and service plan
with the Department, which temporarily placed her children with her sister.  On
December 2, 2006, D.C. was arrested for possession of chemicals for
manufacturing methamphetamine, a fact which she admitted under oath:

Q.        Now,
did you think that, for example, that living in a home that had a meth lab,
that would help you get your children back?

 

A.        No,
sir.

 

Q.        But
that’s what you were doing; correct?

 

A.        Yes,
sir.

 

D.C. pled guilty to this offense
and received ten years’ community supervision.  In October 2008, the Bandera
County District Attorney’s office filed a motion to revoke D.C.’s community
supervision, alleging multiple violations of the terms of her probation.  The alleged
violations included:  (1) assault causing bodily injury to another person; (2)
being in the company of a convicted felon; (3) failure to notify her probation
officer of her change of address within twenty-four hours; (4) failure to pay
fines, court costs, probation fees, and crimestopper’s fees; and (5) failure to
complete community service hours.  The trial court did not revoke D.C.’s
probation at that time.  Instead, the court continued her probation and ordered
her to report to a community residential treatment center in Uvalde, Texas. 
The court ordered D.C. to complete a drug treatment program and parenting
classes at the center, as well as undergo therapy and maintain contact with her
children through letters.  

The trial court ultimately revoked D.C.’s
probation on August 27, 2009, though, when she received a disorderly conduct
ticket and was “unsuccessfully discharged” from the treatment center.  The
record showed that she failed to complete the court-ordered drug rehabilitation
program and parenting classes.  D.C. signed a plea agreement that sentenced her
to two years in prison and one year in state jail.  She claims that, while in
prison, she wrote letters to and drew pictures for R.E.S. and J.D.S.  She was
released from prison two weeks before the termination of parental rights
hearing.  Her children had not been in her care since November 2006.

            During the time D.C. was in prison, R.E.S. and
J.D.S. resided with their father R.S. and his wife A.S.  On January 24, 2009, A.S.
took J.D.S. to Driscoll Children’s Hospital in Corpus Christi, where the
Department was immediately notified.  Department investigator Laura Alaniz
reported that J.D.S. had bruises on his face, legs, and back, and that his
injuries were not consistent with A.S.’s report that J.D.S. had fallen in the
bathtub.  A.S. later changed her story and told another Department
investigator, Juan Garcia, that she became upset when J.D.S. soiled himself and
picked him up by the chest, which caused his bruises.

            Carol McLaughlin, R.N., a forensic nurse on the
Child Abuse Resource and Evaluation (CARE) Team at Driscoll, testified that she
documented approximately twenty-nine injuries to J.D.S., all of which were
caused by non-accidental trauma.  The injuries included multiple bruises in
different stages of healing from the top of J.D.S.’s head to his legs.  She
testified that an x-ray also revealed he had a pubic bone fracture.  Nancy Harper,
M.D., the CARE medical director and a board-certified pediatrician with a
sub-specialty certification in child abuse pediatrics, corroborated that J.D.S.’s
injuries were serious.  Dr. Harper stated that a CAT scan of J.D.S.’s head
revealed bleeding between his scalp and skull.  She testified that “he was
basically a two[-]year old with a healing pubic bone fracture, which requires .
. . high impact force for that to occur.”  She also reported that J.D.S. had “a
subgaleal hemorrhage on his scalp that placed him at risk for anemia
transfusion, shock” and that he had rhabdomylosis, which is muscle breakdown
from trauma.  A.S. was eventually convicted of injury to a child and served
time in prison.

            After considering all of the evidence, the trial
court terminated D.C.’s parental rights of R.E.S. and J.D.S.[3] 
D.C. subsequently filed this appeal.  

II.  Standard of Review and Applicable Law

In hearings regarding the termination
of parental rights, due process requires that the State prove its case for
termination by clear and convincing evidence.  In re J.F.C., 96 S.W.3d
256, 263–64 (Tex. 2002) (citing Santosky v. Kramer, 455 U.S. 745, 769
(1982); In re G.M., 596 S.W.2d 846, 847 (Tex. 1980)).  The clear and
convincing standard is defined as the “measure or degree of proof that will
produce in the mind of the trier of fact a firm belief or conviction as to the
truth of the allegations sought to be established.”  Tex. Fam. Code Ann. § 101.007 (West 2008). 


Taking this elevated standard of
review into consideration, an appellate court, reviewing
the legal sufficiency of the evidence in a parental termination case, must
determine whether a fact-finder could have reasonably formed a firm belief or
conviction that the grounds for termination were proven.  In re J.F.C.,
96 S.W.3d at 265–66.  All evidence should be reviewed “in the light most
favorable to the judgment.”  Id. at 266.  This means that an appellate
court must assume that the fact-finder resolved any disputed facts in favor of
its finding if a reasonable fact-finder could have done so.  Id.  An
appellate court must also disregard all evidence that a reasonable fact-finder
could have disbelieved.  City of Keller v. Wilson, 168 S.W.3d 802, 827
(Tex. 2005).  “If [an appellate court] determines that no reasonable fact-finders
could form a firm belief or conviction that the matter that must be proven is
true, then that court must conclude that the evidence is legally insufficient.” 
In re J.F.C., 96 S.W.3d at 266.

Similarly, the
clear and convincing standard of review in a parental termination hearing
requires a higher level of evidence in order to be factually sufficient.  See
In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). The appellate standard for
reviewing parental termination factual findings is whether the evidence is such
that a fact-finder could have reasonably formed a firm belief or
conviction about the truth of the State's allegations.  Id.  In reviewing the evidence for factual sufficiency, we must
determine whether, on the entire record, a fact-finder could reasonably form a
firm conviction or belief that the parent violated a provision of section
161.001(1) of the family code and that the termination of parental rights would
be in the best interest of the child.  In re M.C.T., 250 S.W.3d 161, 168
(Tex. App.—Fort Worth 2008, no pet.) (citing In re C.H., 89 S.W.3d at
28).  “If, in light of the entire record, the disputed evidence that a
reasonable fact-finder could not have credited in favor of the finding is so
significant that a fact-finder could not have reasonably formed a firm belief
or conviction in the truth of its finding, then the evidence is factually
insufficient.”  Id. (citing In re H.R.M., 209 S.W.3d 105, 108
(Tex. 2006)).  When termination is based on multiple
grounds under section 161.001(1), a court of appeals must affirm the order if
the evidence is sufficient to support any one of the grounds found by the
district court.  See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).

III.  Analysis

A.        Best
Interests of the Child 

            In her first issue, D.C. argues that the
evidence is legally and factually insufficient to show that termination of her
parental rights was in the best interests of her children.  The Texas Supreme
Court has set forth nine non-exhaustive factors that a trial court may consider
when determining if termination of parental rights is in the best interests of
the children.  See Holley v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). 
These factors include:

            (1)
     the desires of the child; 

 

(2)
     the emotional and physical needs of the child now and in the future; 

 

(3)
     the emotional and physical danger to the child now and in the future; 

 

(4)
     the parental abilities of the individuals seeking custody; 

 

(5)       the
programs available to assist these individuals to promote the best interest of
the child; 

 

(6)
     the plans for the child by these individuals or by the agency seeking
custody; 

 

(7)
     the stability of the home or proposed placement; 

 

(8)
     the acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and 

 

(9)      any
excuse for the acts or omissions of the parent.

Id. at 372.  A party seeking an involuntary
termination of parental rights is not required to prove all nine Holley
factors.  In re C.H., 89 S.W.3d 17, 27 (Tex. 2002).  We address these
factors in turn.  

First, with respect to the desires
of the child, we note that R.E.S. and J.D.S. are too young to articulate their
desires.  See generally Tex. Fam.
Code Ann. § 156.101(2) (West Supp. 2010) (providing that a child may not
indicate a preference of their primary residence until they are twelve-years
old).  However, a court may consider the lack of an emotional bond between
children and their parents as a consideration in termination hearings.  See
In re C.N.S., 105 S.W.3d 104, 106 (Tex. App.—Waco 2003, no pet.).  D.C. has
not cared for her children since November 2006, when she voluntarily allowed
her sister to care for them.  The record shows that the last time she saw her
sons was over three years ago, in September 2008.  Although D.C. claims to have
written letters to her sons from prison, there is no evidence that her sons in
fact received these letters.  From the record, it is unclear whether D.C. and
her sons have established an emotional bond.  Based on this evidence, the fact-finder
could have inferred that the children may not desire to be taken from their
current placement to be with someone with whom they have had little to no
contact.

            The physical and emotional dangers to a child are
also crucial factors to consider. See Holley, 544 S.W.2d at 372.  “Although
‘endanger' means more than a threat of metaphysical injury or the possible ill
effects of a less-than-ideal family environment, it is not necessary that the
conduct be directed at the child or that the child actually suffers
injury."  See In re M.C., 917 S.W.2d 268, 269 (Tex. 1996).  D.C.
admitted that, at one point, she used drugs and lived in a home with a
methamphetamine lab.  A parent’s drug use can constitute endangering conduct.  In
re J.O.A., 283 S.W.3d 336, 345 (Tex. 2009); Tex. Dep't of Human Servs.
v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987).  D.C. later served time for these
offenses, which is another consideration in this analysis:  “imprisonment,
coupled with a course of conduct including drug abuse, may support a finding
that the parent engaged in a course of conduct which endangered a child's
physical or emotional well-being.”  In re K.C., Jr., 23 S.W.3d 604, 608
(Tex. App.—Beaumont 2000, no pet.).  

            Regarding D.C.’s parental abilities, again, she
admitted that she used drugs and lived in a home with a lab that manufactured
methamphetamine.  See Holley, 544 S.W.2d at 372.  She also stated that
she has not seen her children in over three years, although she did attempt to
keep in touch with them through letters.  While on probation, she committed the
crime of assault and consorted with convicted felons, both of which were
violations of the terms of her community supervision.  Furthermore, although
she had access to two programs at the Uvalde treatment center which would help
her parenting abilities, she failed to make complete use of these resources.  A
fact-finder may infer that a parent’s future conduct can be measured by her
past conduct.  See Davis v. Travis County Child Welfare Unit, 564 S.W.2d
415, 421 (Tex. Civ. App.—Austin 1978, no writ).  Here, the trial court as
fact-finder could have determined that D.C.’s prior drug use, criminal history,
and failure to complete the court-ordered programs could be a reflection on D.C.’s
future parenting to R.E.S. and J.D.S.

D.C. testified that she had a place
for R.E.S. and J.D.S. to stay, food for them to eat, and that her sister could
help babysit them when she was at work.  However, the trial court could have
questioned the stability of these living plans given that she was released from
jail only two weeks prior to the termination hearing.  See Holley, 544
S.W.2d at 372.  “The trial court [is] not required to accept the truth or
accuracy of appellant's testimony, either as to her past actions or her
future intentions.”  D.F. v. State, 525 S.W.2d 933, 939–40 (Tex. Civ.
App.—Houston [1st Dist.] 1975, writ ref’d n.r.e.).  Thus, the trial court
reasonably could have doubted D.C.’s testimony and her plans for her children,
given her recent release from jail.

We find the trial court’s summary
of the evidence regarding D.C. persuasive in our analysis of R.E.S. and
J.D.S.’s best interests:

That gets us to [D.C.]. 
Again, we’ve got some issues here and the biggest note that I had is that these
children were taken, placed outside her home since 2006.  She complains about
where they’ve been, what they’ve had, what’s been going on and I had to ask
myself the question is what has she done to try to get her kids back.  What has
she done?  She winds up getting arrested.  She winds up going to drug
treatment.  She gets thrown out of drug treatment.  She winds up getting
revoked on her probation and she winds up going to prison.  These are all
things that you did, [D.C.]; that you did yourself.  No one forced you to do
these things.  This is what you did.  And that allowed these children to remain
in environments which endangered their well-being; their emotional well-being,
if anything . . .  You haven’t been in your home since 2006.  I’m not even sure
they would know their mother. . . .

 

In light of the foregoing evidence,
we conclude that the Department proved that termination of D.C.’s parental
rights was in the children’s best interests by clear and convincing evidence.  In
re J.F.C., 96 S.W.3d at 263.  Viewing the evidence in the light most
favorable to the judgment, we conclude that the evidence supporting D.C.’s
termination of parental rights was legally sufficient.  Id. at 265-66. 
Further, because a fact-finder could have reasonably formed a firm belief or
conviction that termination of D.C.’s parental rights was in the children’s
best interests, this finding was supported by factually sufficient evidence, as
well.  See In re C.H., 89 S.W.3d at 25.  We overrule D.C.’s first issue.

B.        Conditions
or Surroundings Which Endangered the Children’s Physical or Emotional
Well-being

 

            D.C. further complains that the evidence
that she knowingly placed or allowed her children to remain in conditions or
surroundings which endangered their physical or emotional well-being was
legally and factually insufficient.  Specifically, she argues that J.D.S. was
injured by A.S. while D.C. was in prison, and that she had no control over who
cared for her son during this time.

However, D.C. did admit that she once
used drugs and lived in a home that produced methamphetamine.  These
“conditions or surroundings” endangered R.E.S. and J.D.S.’s physical and
emotional well-being.  “A parent's use of narcotics and its effect on his or
her ability to parent may qualify as an endangering course of conduct.”  In
re J.O.A., 283 S.W.3d at 345.  Viewing the evidence in the light most
favorable to the judgment, we conclude that the evidence was legally sufficient
that D.C. knowingly placed or allowed her children to remain in conditions that
endangered their physical and emotional well-being.  In re J.F.C., 96
S.W.3d at 265–66.  Further, because the evidence is such that a fact-finder
could have reasonably formed a firm belief or conviction about the truth
of the State's allegations, this finding is factually sufficient, as well.  See
In re C.H., 89 S.W.3d at 25.  Accordingly, we overrule this second issue.

C.        Conduct
Which Endangered the Children’s Physical or Emotional Well-being

 

D.C. further contends that there
was legally and factually insufficient evidence that she engaged in conduct or
knowingly placed her children with persons who engaged in conduct which
endangered their physical or emotional well-being.  Again, she points out that
J.D.S. was injured while she was in prison and he was in the care of his father
R.S. and stepmother A.S..  However, if multiple grounds for termination are
alleged, only one predicate finding under the family code is necessary to
support a judgment of termination when there is also a finding that termination
is in the child’s best interests.  See In re A.V., 113 S.W.3d at 362; Tex. Fam. Code Ann. § 161.001(1) (West
Supp. 2010).  Because we have concluded that the evidence was legally and
factually sufficient that termination of D.C.’s parental rights was in the
children’s best interests, and that she endangered her children’s conditions or
surroundings, we need not address this issue.  See Tex. R. App. P. 47.1 (“[t]he court of
appeals must hand down a written opinion that is as brief as practicable but
that addresses every issue raised and necessary to final disposition of the
appeal.”).  

D.        The State’s Efforts to Return the Children to D.C.

            By her fourth issue, D.C. complains that the Department
failed to make reasonable efforts to return her children to her.  She cites the
following:

            Efforts
shall be made to preserve and reunify families—

 

(i)         prior
to the placement of a child in foster care, to prevent or eliminate the need
for removing the child from the child’s home; and 

 

(ii)        to
make it possible for a child to safely return to the child’s home.

42 U.S.C.A. § 671(a)(15) (2006).  The evidence shows that D.C.’s
personal choices prevented the State from reuniting her with her children.  D.C.
admitted that she once used drugs and lived in a home with a lab that
manufactured methamphetamine.  While on probation, she engaged in criminal
conduct by assaulting another person and also associated with a convicted felon,
both of which were violations of the terms of her community supervision.  When
the trial court ordered her to report to a community residential treatment
center in Uvalde, Texas, instead of prison, she failed to complete her court-ordered
drug rehabilitation program and parenting classes.  We are therefore not persuaded
by this facet of D.C.’s argument.

D.C.
also argues that the Department failed to provide a placement plan for her
children.  Evidence about placement plans and adoption are, of course, relevant
to best interest.  In re C.H., 89 S.W.3d 17, 28 (Tex. 2002).  However, the lack of evidence about definitive plans for
permanent placement and adoption cannot be the dispositive factor; otherwise,
determinations regarding best interest would regularly be subject to reversal
on the sole ground that an adoptive family has yet to be located.  Id. 
Instead, the inquiry is whether, on the entire record, a fact-finder could
reasonably form a firm conviction or belief that termination of the parent's
rights would be in the child's best interest—even if the agency is unable to
identify with precision the child's future home environment.  Id.  In
light of the foregoing, we overrule D.C.’s fourth issue.

IV. Conclusion

            Having
overruled all of D.C.’s issues, we affirm the judgment of the trial court.

 



________________________

GINA
M. BENAVIDES,

Justice

 

 

Delivered and filed the

23rd day of June, 2011. 

 

 

 









[1] The ages of the children reflect
their ages at the time of the termination of parental rights hearing, held on
January 28, 2010, January 29, 2010, and February 4, 2010 in the 36th
Judicial District Court of San Patricio County, Texas.   

 





[2] R.S. and A.S. had a seventeen-month old girl, A.E.S., who is not a subject in this
appeal.

 





[3] The trial court also terminated
R.S.’s parental rights over R.E.S., J.D.S., and A.E.S., and A.S.’s parental
rights over A.E.S.  Neither R.S. nor A.S. appealed this decision.