[pic]

 NUMBER 13-10-00132-CV

 COURT OF APPEALS

 THIRTEENTH DISTRICT OF TEXAS

 CORPUS CHRISTI - EDINBURG

 IN THE INTEREST OF R.E.S. III, J.D.S. AND A.E.S., CHILDREN

 On appeal from the 36th District Court
 of San Patricio County, Texas.

 MEMORANDUM OPINION

 Before Chief Justice Valdez and Justices Rodriguez and Benavides
 Memorandum Opinion by Justice Benavides

 In this case involving the termination of parental rights, appellant, D.C., brings four issues
on appeal. By her first three issues, D.C. argues that there was legal and factually insufficient
evidence to prove that: (1) termination of parental rights was in her children’s best interests;
(2) she knowingly placed or allowed her children to remain in conditions or surroundings which
endangered their physical or emotional well-being; and (3) she engaged in conduct or knowingly
placed her children with persons who engaged in conduct which endangered their physical or emotional
well-being. D.C.’s fourth issue complains that the Texas Department of Family and Protective
Services (the “Department”) failed to make a reasonable effort to return her children to her. We
affirm.
 I. Background
 D.C. is the mother of R.E.S. III, a five-year old boy, and J.D.S., a three-year old boy.[1]
Her children’s father is R.S., who is married to A.S.[2] This appeal arises from a hearing wherein
the trial court terminated D.C.’s parental rights of R.E.S. and J.D.S.
 The record shows that D.C.’s first involvement with the Department occurred in November 2006.
The Department initiated an investigation of D.C. and R.S. upon receiving a complaint that they were
neglecting R.E.S. and J.D.S. and using drugs. As a result of the Department’s investigation, D.C.
signed a voluntary placement and service plan with the Department, which temporarily placed her
children with her sister. On December 2, 2006, D.C. was arrested for possession of chemicals for
manufacturing methamphetamine, a fact which she admitted under oath:
 Q. Now, did you think that, for example, that living in a home that had a meth lab, that
 would help you get your children back?

 A. No, sir.

 Q. But that’s what you were doing; correct?

 A. Yes, sir.

 D.C. pled guilty to this offense and received ten years’ community supervision. In October
2008, the Bandera County District Attorney’s office filed a motion to revoke D.C.’s community
supervision, alleging multiple violations of the terms of her probation. The alleged violations
included: (1) assault causing bodily injury to another person; (2) being in the company of a
convicted felon; (3) failure to notify her probation officer of her change of address within twenty-
four hours; (4) failure to pay fines, court costs, probation fees, and crimestopper’s fees; and (5)
failure to complete community service hours. The trial court did not revoke D.C.’s probation at
that time. Instead, the court continued her probation and ordered her to report to a community
residential treatment center in Uvalde, Texas. The court ordered D.C. to complete a drug treatment
program and parenting classes at the center, as well as undergo therapy and maintain contact with
her children through letters.
 The trial court ultimately revoked D.C.’s probation on August 27, 2009, though, when she
received a disorderly conduct ticket and was “unsuccessfully discharged” from the treatment center.
The record showed that she failed to complete the court-ordered drug rehabilitation program and
parenting classes. D.C. signed a plea agreement that sentenced her to two years in prison and one
year in state jail. She claims that, while in prison, she wrote letters to and drew pictures for
R.E.S. and J.D.S. She was released from prison two weeks before the termination of parental rights
hearing. Her children had not been in her care since November 2006.
 During the time D.C. was in prison, R.E.S. and J.D.S. resided with their father R.S. and his
wife A.S. On January 24, 2009, A.S. took J.D.S. to Driscoll Children’s Hospital in Corpus Christi,
where the Department was immediately notified. Department investigator Laura Alaniz reported that
J.D.S. had bruises on his face, legs, and back, and that his injuries were not consistent with
A.S.’s report that J.D.S. had fallen in the bathtub. A.S. later changed her story and told another
Department investigator, Juan Garcia, that she became upset when J.D.S. soiled himself and picked
him up by the chest, which caused his bruises.
 Carol McLaughlin, R.N., a forensic nurse on the Child Abuse Resource and Evaluation (CARE)
Team at Driscoll, testified that she documented approximately twenty-nine injuries to J.D.S., all of
which were caused by non-accidental trauma. The injuries included multiple bruises in different
stages of healing from the top of J.D.S.’s head to his legs. She testified that an x-ray also
revealed he had a pubic bone fracture. Nancy Harper, M.D., the CARE medical director and a board-
certified pediatrician with a sub-specialty certification in child abuse pediatrics, corroborated
that J.D.S.’s injuries were serious. Dr. Harper stated that a CAT scan of J.D.S.’s head revealed
bleeding between his scalp and skull. She testified that “he was basically a two[-]year old with a
healing pubic bone fracture, which requires . . . high impact force for that to occur.” She also
reported that J.D.S. had “a subgaleal hemorrhage on his scalp that placed him at risk for anemia
transfusion, shock” and that he had rhabdomylosis, which is muscle breakdown from trauma. A.S. was
eventually convicted of injury to a child and served time in prison.
 After considering all of the evidence, the trial court terminated D.C.’s parental rights of
R.E.S. and J.D.S.[3] D.C. subsequently filed this appeal.
 II. Standard of Review and Applicable Law
 In hearings regarding the termination of parental rights, due process requires that the State
prove its case for termination by clear and convincing evidence. In re J.F.C., 96 S.W.3d 256,
263–64 (Tex. 2002) (citing Santosky v. Kramer, 455 U.S. 745, 769 (1982); In re G.M., 596 S.W.2d 846,
847 (Tex. 1980)). The clear and convincing standard is defined as the “measure or degree of proof
that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of
the allegations sought to be established.” Tex. Fam. Code Ann. § 101.007 (West 2008).
 Taking this elevated standard of review into consideration, an appellate court, reviewing the
legal sufficiency of the evidence in a parental termination case, must determine whether a fact-
finder could have reasonably formed a firm belief or conviction that the grounds for termination
were proven. In re J.F.C., 96 S.W.3d at 265–66. All evidence should be reviewed “in the light most
favorable to the judgment.” Id. at 266. This means that an appellate court must assume that the
fact-finder resolved any disputed facts in favor of its finding if a reasonable fact-finder could
have done so. Id. An appellate court must also disregard all evidence that a reasonable fact-
finder could have disbelieved. City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005). “If [an
appellate court] determines that no reasonable fact-finders could form a firm belief or conviction
that the matter that must be proven is true, then that court must conclude that the evidence is
legally insufficient.” In re J.F.C., 96 S.W.3d at 266.
 Similarly, the clear and convincing standard of review in a parental termination hearing
requires a higher level of evidence in order to be factually sufficient. See In re C.H., 89 S.W.3d
17, 25 (Tex. 2002). The appellate standard for reviewing parental termination factual findings is
whether the evidence is such that a fact-finder could have reasonably formed a firm belief or
conviction about the truth of the State's allegations. Id. In reviewing the evidence for factual
sufficiency, we must determine whether, on the entire record, a fact-finder could reasonably form a
firm conviction or belief that the parent violated a provision of section 161.001(1) of the family
code and that the termination of parental rights would be in the best interest of the child. In re
M.C.T., 250 S.W.3d 161, 168 (Tex. App.—Fort Worth 2008, no pet.) (citing In re C.H., 89 S.W.3d at
28). “If, in light of the entire record, the disputed evidence that a reasonable fact-finder could
not have credited in favor of the finding is so significant that a fact-finder could not have
reasonably formed a firm belief or conviction in the truth of its finding, then the evidence is
factually insufficient.” Id. (citing In re H.R.M., 209 S.W.3d 105, 108 (Tex. 2006)). When
termination is based on multiple grounds under section 161.001(1), a court of appeals must affirm
the order if the evidence is sufficient to support any one of the grounds found by the district
court. See In re A.V., 113 S.W.3d 355, 362 (Tex. 2003).
 III. Analysis
A. Best Interests of the Child
 In her first issue, D.C. argues that the evidence is legally and factually insufficient to
show that termination of her parental rights was in the best interests of her children. The Texas
Supreme Court has set forth nine non-exhaustive factors that a trial court may consider when
determining if termination of parental rights is in the best interests of the children. See Holley
v. Adams, 544 S.W.2d 367, 372 (Tex. 1976). These factors include:
 (1) the desires of the child;

 (2) the emotional and physical needs of the child now and in the future;

 (3) the emotional and physical danger to the child now and in the future;

 (4) the parental abilities of the individuals seeking custody;

 (5) the programs available to assist these individuals to promote the best interest of the
 child;

 (6) the plans for the child by these individuals or by the agency seeking custody;

 (7) the stability of the home or proposed placement;

 (8) the acts or omissions of the parent which may indicate that the existing parent-child
 relationship is not a proper one; and

 (9) any excuse for the acts or omissions of the parent.
Id. at 372. A party seeking an involuntary termination of parental rights is not required to prove
all nine Holley factors. In re C.H., 89 S.W.3d 17, 27 (Tex. 2002). We address these factors in
turn.
 First, with respect to the desires of the child, we note that R.E.S. and J.D.S. are too young
to articulate their desires. See generally Tex. Fam. Code Ann. § 156.101(2) (West Supp. 2010)
(providing that a child may not indicate a preference of their primary residence until they are
twelve-years old). However, a court may consider the lack of an emotional bond between children and
their parents as a consideration in termination hearings. See In re C.N.S., 105 S.W.3d 104, 106
(Tex. App.—Waco 2003, no pet.). D.C. has not cared for her children since November 2006, when she
voluntarily allowed her sister to care for them. The record shows that the last time she saw her
sons was over three years ago, in September 2008. Although D.C. claims to have written letters to
her sons from prison, there is no evidence that her sons in fact received these letters. From the
record, it is unclear whether D.C. and her sons have established an emotional bond. Based on this
evidence, the fact-finder could have inferred that the children may not desire to be taken from
their current placement to be with someone with whom they have had little to no contact.
 The physical and emotional dangers to a child are also crucial factors to consider. See
Holley, 544 S.W.2d at 372. “Although ‘endanger' means more than a threat of metaphysical injury or
the possible ill effects of a less-than-ideal family environment, it is not necessary that the
conduct be directed at the child or that the child actually suffers injury." See In re M.C., 917
S.W.2d 268, 269 (Tex. 1996). D.C. admitted that, at one point, she used drugs and lived in a home
with a methamphetamine lab. A parent’s drug use can constitute endangering conduct. In re J.O.A.,
283 S.W.3d 336, 345 (Tex. 2009); Tex. Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.
1987). D.C. later served time for these offenses, which is another consideration in this analysis:
“imprisonment, coupled with a course of conduct including drug abuse, may support a finding that the
parent engaged in a course of conduct which endangered a child's physical or emotional well-being.”
In re K.C., Jr., 23 S.W.3d 604, 608 (Tex. App.—Beaumont 2000, no pet.).
 Regarding D.C.’s parental abilities, again, she admitted that she used drugs and lived in a
home with a lab that manufactured methamphetamine. See Holley, 544 S.W.2d at 372. She also stated
that she has not seen her children in over three years, although she did attempt to keep in touch
with them through letters. While on probation, she committed the crime of assault and consorted
with convicted felons, both of which were violations of the terms of her community supervision.
Furthermore, although she had access to two programs at the Uvalde treatment center which would help
her parenting abilities, she failed to make complete use of these resources. A fact-finder may
infer that a parent’s future conduct can be measured by her past conduct. See Davis v. Travis
County Child Welfare Unit, 564 S.W.2d 415, 421 (Tex. Civ. App.—Austin 1978, no writ). Here, the
trial court as fact-finder could have determined that D.C.’s prior drug use, criminal history, and
failure to complete the court-ordered programs could be a reflection on D.C.’s future parenting to
R.E.S. and J.D.S.
 D.C. testified that she had a place for R.E.S. and J.D.S. to stay, food for them to eat, and
that her sister could help babysit them when she was at work. However, the trial court could have
questioned the stability of these living plans given that she was released from jail only two weeks
prior to the termination hearing. See Holley, 544 S.W.2d at 372. “The trial court [is] not
required to accept the truth or accuracy of appellant's testimony, either as to her past actions or
her future intentions.” D.F. v. State, 525 S.W.2d 933, 939–40 (Tex. Civ. App.—Houston [1st Dist.]
1975, writ ref’d n.r.e.). Thus, the trial court reasonably could have doubted D.C.’s testimony and
her plans for her children, given her recent release from jail.
 We find the trial court’s summary of the evidence regarding D.C. persuasive in our analysis of
R.E.S. and J.D.S.’s best interests:
 That gets us to [D.C.]. Again, we’ve got some issues here and the biggest note that I had is
 that these children were taken, placed outside her home since 2006. She complains about where
 they’ve been, what they’ve had, what’s been going on and I had to ask myself the question is
 what has she done to try to get her kids back. What has she done? She winds up getting
 arrested. She winds up going to drug treatment. She gets thrown out of drug treatment. She
 winds up getting revoked on her probation and she winds up going to prison. These are all
 things that you did, [D.C.]; that you did yourself. No one forced you to do these things.
 This is what you did. And that allowed these children to remain in environments which
 endangered their well-being; their emotional well-being, if anything . . . You haven’t been in
 your home since 2006. I’m not even sure they would know their mother. . . .

 In light of the foregoing evidence, we conclude that the Department proved that termination of
D.C.’s parental rights was in the children’s best interests by clear and convincing evidence. In re
J.F.C., 96 S.W.3d at 263. Viewing the evidence in the light most favorable to the judgment, we
conclude that the evidence supporting D.C.’s termination of parental rights was legally sufficient.
Id. at 265-66. Further, because a fact-finder could have reasonably formed a firm belief or
conviction that termination of D.C.’s parental rights was in the children’s best interests, this
finding was supported by factually sufficient evidence, as well. See In re C.H., 89 S.W.3d at 25.
We overrule D.C.’s first issue.
B. Conditions or Surroundings Which Endangered the Children’s Physical or Emotional Well-being

 D.C. further complains that the evidence that she knowingly placed or allowed her children to
remain in conditions or surroundings which endangered their physical or emotional well-being was
legally and factually insufficient. Specifically, she argues that J.D.S. was injured by A.S. while
D.C. was in prison, and that she had no control over who cared for her son during this time.
 However, D.C. did admit that she once used drugs and lived in a home that produced
methamphetamine. These “conditions or surroundings” endangered R.E.S. and J.D.S.’s physical and
emotional well-being. “A parent's use of narcotics and its effect on his or her ability to parent
may qualify as an endangering course of conduct.” In re J.O.A., 283 S.W.3d at 345. Viewing the
evidence in the light most favorable to the judgment, we conclude that the evidence was legally
sufficient that D.C. knowingly placed or allowed her children to remain in conditions that
endangered their physical and emotional well-being. In re J.F.C., 96 S.W.3d at 265–66. Further,
because the evidence is such that a fact-finder could have reasonably formed a firm belief or
conviction about the truth of the State's allegations, this finding is factually sufficient, as
well. See In re C.H., 89 S.W.3d at 25. Accordingly, we overrule this second issue.
C. Conduct Which Endangered the Children’s Physical or Emotional Well-being

 D.C. further contends that there was legally and factually insufficient evidence that she
engaged in conduct or knowingly placed her children with persons who engaged in conduct which
endangered their physical or emotional well-being. Again, she points out that J.D.S. was injured
while she was in prison and he was in the care of his father R.S. and stepmother A.S.. However, if
multiple grounds for termination are alleged, only one predicate finding under the family code is
necessary to support a judgment of termination when there is also a finding that termination is in
the child’s best interests. See In re A.V., 113 S.W.3d at 362; Tex. Fam. Code Ann. § 161.001(1)
(West Supp. 2010). Because we have concluded that the evidence was legally and factually sufficient
that termination of D.C.’s parental rights was in the children’s best interests, and that she
endangered her children’s conditions or surroundings, we need not address this issue. See Tex. R.
App. P. 47.1 (“[t]he court of appeals must hand down a written opinion that is as brief as
practicable but that addresses every issue raised and necessary to final disposition of the
appeal.”).
D. The State’s Efforts to Return the Children to D.C.
 By her fourth issue, D.C. complains that the Department failed to make reasonable efforts to
return her children to her. She cites the following:
 Efforts shall be made to preserve and reunify families—

 (i) prior to the placement of a child in foster care, to prevent or eliminate the need for
 removing the child from the child’s home; and

 (ii) to make it possible for a child to safely return to the child’s home.
42 U.S.C.A. § 671(a)(15) (2006). The evidence shows that D.C.’s personal choices prevented the
State from reuniting her with her children. D.C. admitted that she once used drugs and lived in a
home with a lab that manufactured methamphetamine. While on probation, she engaged in criminal
conduct by assaulting another person and also associated with a convicted felon, both of which were
violations of the terms of her community supervision. When the trial court ordered her to report to
a community residential treatment center in Uvalde, Texas, instead of prison, she failed to complete
her court-ordered drug rehabilitation program and parenting classes. We are therefore not persuaded
by this facet of D.C.’s argument.
 D.C. also argues that the Department failed to provide a placement plan for her children.
Evidence about placement plans and adoption are, of course, relevant to best interest. In re C.H.,
89 S.W.3d 17, 28 (Tex. 2002). However, the lack of evidence about definitive plans for permanent
placement and adoption cannot be the dispositive factor; otherwise, determinations regarding best
interest would regularly be subject to reversal on the sole ground that an adoptive family has yet
to be located. Id. Instead, the inquiry is whether, on the entire record, a fact-finder could
reasonably form a firm conviction or belief that termination of the parent's rights would be in the
child's best interest—even if the agency is unable to identify with precision the child's future
home environment. Id. In light of the foregoing, we overrule D.C.’s fourth issue.
 IV. Conclusion
 Having overruled all of D.C.’s issues, we affirm the judgment of the trial court.

 ________________________
 GINA M. BENAVIDES,
 Justice

Delivered and filed the
23rd day of June, 2011.

-----------------------
[1] The ages of the children reflect their ages at the time of the termination of parental rights
hearing, held on January 28, 2010, January 29, 2010, and February 4, 2010 in the 36th Judicial
District Court of San Patricio County, Texas.

[2] R.S. and A.S. had a seventeen-month old girl, A.E.S., who is not a subject in this appeal.

[3] The trial court also terminated R.S.’s parental rights over R.E.S., J.D.S., and A.E.S., and
A.S.’s parental rights over A.E.S. Neither R.S. nor A.S. appealed this decision.