

# NUMBER 13-23-00045-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE INTEREST OF S.A.L., A CHILD

**On appeal from the County Court at Law No. 5
of Nueces County, Texas.**

## MEMORANDUM OPINION

**Before Justices Tijerina, Silva, and Peña
Memorandum Opinion by Justice Tijerina**

Appellant C.H.[1] (Mother) appeals the termination of her parental rights to her son S.L. By three issues, Mother argues: (1) the trial court was without jurisdiction when it entered its order terminating her rights, and therefore the judgment is void; (2) the evidence is insufficient to support the termination of her parental rights; and (3) termination was not in S.L.'s best interest. We affirm.

---

[1] To protect the identity of the minor children, we refer to the children and their relatives by their initials or an alias. *See* TEX. FAM. CODE ANN. § 109.002(d); TEX. R. APP. P. 9.8(a).

# I. BACKGROUND

Mother is the biological parent of J.C., A.C., D.B., T.H., J.F., and S.L. Only S.L. is the subject of this suit. S.L. was born on September 18, 2020. On December 28, 2020, appellee the Texas Department of Family and Protective Services (Department) filed a petition to terminate Mother's parental rights, alleging Mother tested positive for methamphetamines and amphetamines while pregnant with S.L.; S.L. was residing with his alleged father V.R. and his wife S.V.; and V.R. and S.V. were unwilling to provide a drug test. The Department further alleged that while V.R. identified himself as S.L.'s primary caregiver, he did not allow the Department access to his home to conduct a home assessment. Thus, it was "unknown if [S.L.] has proper sleeping arrangements or if the inside of [V.R.'s] home pose[d] a safety threat for [S.L.]."[2]

The trial court rendered an order appointing the Department temporary managing conservator on March 23, 2021. On September 19, 2022, the trial court held a bench trial. S.L. was two years old at the time of trial. At the conclusion of the trial, the trial court terminated Mother's parental rights and appointed the Department permanent managing conservator of S.L. The trial court found by clear and convincing evidence that Mother had knowingly allowed S.L. to remain in conditions which endangered his physical or emotional well-being, placed S.L. with persons who endangered his physical or emotional well-being, constructively abandoned S.L., failed to comply with the family plan of service, and used a controlled substance in a manner that endangered the health or safety of S.L.

---

[2] The Department noted that Adult Protective Services (APS) received a report alleging physical neglect of V.R.'s physically disabled father. APS's disposition was that the allegation of physical neglect by V.R. was validated.

2

*See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E), (N), (O), (P). The trial court also found by clear and convincing evidence that termination of Mother's parental rights was in S.L.'s best interest. *See id.* § 161.001(b)(2). Mother then appealed.

## II. THE EVIDENCE

The Department presented evidence demonstrating the need for termination of Mother's parental rights through the testimony from Ariel Burger, a Department conservatorship supervisor; Irma Saenz, a Department conservatorship supervisor; Mother; and Foster mother.

### A. Burger's Testimony

Burger testified that the Department became involved in this case because Mother tested positive for methamphetamines throughout her pregnancy with S.L. S.L. was placed in the care of V.R., who claimed to be S.L.'s father, but genetic testing later revealed that V.R. was not S.L.'s biological father.

Burger described V.R. and S.V. as being uncooperative; they refused to drug test without a court order, and they refused the Department access to their home. The Department was concerned about S.L. residing with V.R. because V.R. tested positive for benzodiazepines and cocaine following a court order, and S.V. tested positive for cocaine and marijuana. After the Department was named temporary managing conservator, V.R. refused to surrender S.L. Consequently, the court issued a writ of attachment to obtain possession of S.L. When the writ was executed, V.R. still refused to surrender S.L., and he became combative. Eventually, Mother surrendered S.L. to the Department, but according to Burger, she was irate, using foul language, and recorded

3

the incident on her phone. Law enforcement assisted the Department in keeping Mother away for the Department's employees' safety.

Burger testified that the Department has provided services to mitigate its concerns for removal such as drug testing, parenting and individual counseling, substance abuse counseling, which Mother was required to complete as part of her family plan of service. Burger stated that although Mother did attend "some" classes, Mother did not complete the requested services, such as substance abuse counseling, individual counseling, parenting classes, and she failed to submit to an "exceptional amount" of drug tests. According to Burger, Mother was asked to drug test at least twice a month but missed several. Burger explained that the Department offered Mother bus passes to alleviate any transportation issues, but she never requested one.

Burger explained that Mother had an extensive history with the Department as five other children had been removed from her care beginning in 2010. Maternal grandmother H.H. is the permanent managing conservator of Mother's four minor children but informed the Department that she was unable to care for S.L. because she did not have any more space in her home, and Mother caused "too much drama."[3]

The Department made numerous visits to Mother's apartment pursuant to the trial court's order, but Mother prohibited the Department from entering her residence. Burger opined that Mother is not able to provide S.L. with a safe environment. Additionally, the Department was unable to verify that Mother had stable employment. Burger believed that termination was in S.L.'s best interest because Mother had not demonstrated a

---

[3] Mother's adult child, J.C., lives alone.

4

lifestyle change to mitigate any of the Department's concerns. According to Burger, S.L. is currently with his fifth foster family, who intends to adopt him.

## B. Saenz's Testimony

Saenz testified that Mother's involvement with the Department began in April 2010 when the Department received allegations that Mother physically abused her children, J.C. and A.C., smoked marijuana in and out of the home, and was around the children while intoxicated. Mother participated in drug treatment, and those allegations were ruled out. In January 2017, the Department received another report, alleging physical abuse of A.C., Mother used drugs in front of the children, and the children had access to drugs. It was also alleged that Mother threw J.C. and hit him with both open and closed fists, but the Department was unable to complete its investigation because Mother was uncooperative. In November 2018, the Department was involved with Mother again for allegations of neglectful supervision of D.B. and T.H., and Saenz stated "it was alleged that [Mother] was 30 weeks pregnant and tested positive for marijuana at a doctor's appointment." In September 2019, the Department received a report that A.C. was found unresponsive due to a suicide attempt by ingesting drugs. Two months later, the Department received another allegation regarding Mother's neglectful supervision of J.F. because he was born at twenty-nine weeks, weighing two pounds, and Mother tested positive for amphetamines upon admission at the hospital.

The Department made numerous attempts to locate S.L., but Mother would not provide any information. Saenz indicated that it took the Department "a couple of months"

to locate S.L. Saenz added that Mother was always "irate," "uncooperative," and would use[] foul language."

### C. Mother's Testimony

Mother agreed that she tested positive for methamphetamines on August 12, 2020, but she did not recall testing positive for methamphetamines any other time. According to Mother, she is unaware that she has missed several drug tests because she does not "have an actual phone" anymore although she can be reached via e-mail. Mother admitted she "talk[ed] foul to" the Department but claimed that she "tried to keep it cool, calm, and collected with them" until she felt she was being "belittled."

According to Mother, she was aware that she was required to complete court-ordered services, but she did not complete those services because she cannot "attend all these classes when [she has] to make a living" for herself and for her five minor children. Mother admitted that her virtual visits with S.L. were suspended. When pressed as to whether her visitations were suspended because Mother was not cooperating and not participating in the required services, Mother replied, "I'm not sure as to why they were suspended, actually."

Mother stated that H.H. lives in a two-bedroom apartment with Mother's four minor children. Yet, Mother disagreed that it would be difficult for H.H. to care for S.L. because S.L. is "a little person."

Mother stated she is temporarily residing with another individual in an apartment doing "various jobs," "odd jobs," and "[d]ifferent stuff." Mother clarified that her stay at this apartment was just "a temporary one," but she had "room" for S.L.

**D.    Foster Mother's Testimony**

S.L.'s Foster mother testified that she has had S.L. in her care for about one week but had "respite care for him prior to that for around three weeks." Nonetheless, she has known S.L. for at least six months because she is good friends with his previous foster parents, and she met S.L. while he was placed there. Foster mother testified that she invited S.L.'s previous foster parents to his birthday party so that he is still able to maintain contact with them. S.L. currently attends the same school program he attended with his previous foster placement, so S.L. is able to interact with the kids he has grown familiar to.

Foster mother lives in a four-bedroom home with her two biological children ages nine and six, and a two-and-a-half-year-old toddler who she adopted through foster care six months prior to trial. According to Foster mother, S.L. is "doing wonderful," "bonding with the other siblings," and "showing signs of healthy growth." She explained that S.L. and his foster sister get along as they are very close in age. Currently, Foster mother is working on S.L.'s speech, and since he has been in her care, has learned ten new words. Foster mother stated that she would "absolutely" pursue adoption if the trial court terminated Mother's rights. Foster mother believed she could provide S.L. with a stable environment.

## III.    JURISDICTION

By her first issue, Mother argues the trial court's judgment is void because the trial court's jurisdiction was not properly extended pursuant to § 263.401(a) of the family code, so the court "lost jurisdiction over the case on March 28, 2022."

7

**A.    Applicable Law**

Section 263.401(a) of the family code provides that if a trial court fails to commence the trial on the merits or grant an extension within one year after the trial court appointed the Department as temporary managing conservator, the trial court's jurisdiction terminates, and the case is automatically dismissed. *See id.* § 263.401(a) (providing that the trial court's jurisdiction ends on the first Monday after the first anniversary of the date the trial court rendered a temporary order appointing the department as temporary managing conservator); *In re G.X.H.*, 627 S.W.3d 288, 292 (Tex. 2021). However, § 263.401(b) provides that the trial court may extend its jurisdiction by an additional 180 days if extraordinary circumstances necessitate the child remaining in the Department's conservatorship and continuing the Department's appointment is in the child's best interest. *See* TEX. FAM. CODE ANN. § 263.401(b).

Here, the trial court rendered an order appointing the Department temporary managing conservator on March 22, 2021. The first Monday after the anniversary of that date was March 28, 2022. Therefore, unless the trial court either (1) "commenced the trial on the merits," or (2) "granted an extension under Subsection (b) or (b-1)" under § 263.401, the court's jurisdiction over the case ends on March 28, 2022. *See id.* § 263.401(a), (b). This extension may be made "orally on the record or in some other writing." *In re G.X.H.*, 627 S.W.3d at 299.

**B.    Discussion**

The record provides that on March 17, 2022, the trial court held a hearing to consider the Department's request for an "extension pursuant to § 263.401." According

8

to the record, Mother attended the hearing, and Mother's counsel "agreed" to an extension pursuant to § 263.401. At the conclusion of the hearing, the trial court orally granted the Department's unopposed motion for continuance.

Following the trial court's oral extension, the trial court held a placement hearing on March 31, 2022, and another hearing on April 19, 2022. Mother appeared at the hearings. A new scheduling order was held on May 3, 2022, setting a trial date for August 22, 2022.

Thereafter, on June 22, 2022, the Department submitted a written order for the trial court to memorialize its March 17, 2022 order granting an oral extension, which the trial court signed on June 28, 2022. The order reads that the trial court—before the end of the initial dismissal period—found "that extraordinary circumstances necessitate the child remaining in the temporary managing conservatorship" of the Department and further extended the dismissal date to September 24, 2022.[4] *See id.* at 300–01 ("But there is no requirement in the statute that this order be rendered before the initial dismissal date.").

The family code permits the court to render the order orally. *See* TEX. FAM. CODE ANN. § 101.026 (providing that pronouncement may be made orally in the presence of the court reporter or in writing, "including on the court's docket sheet or by a separate written instrument"); *see also In re O.O.*, No. 13-21-00411-CV, 2022 WL 1559725, at *8 (Tex. App.—Corpus Christi–Edinburg May 17, 2022, pet. denied) (mem. op.) (permitting a trial court to grant extension through a docket entry); *In re R.J.R.*, No. 04-21-00246-CV, 2021

---

[4] The order further provides other findings leading to the continuation of the Department's conservatorship.

WL 5813827, at *2 (Tex. App.—San Antonio Dec. 8, 2021, no pet.) (mem. op.) ("[T]he court may have orally extended the automatic dismissal date during the March 16 hearing."). "In the absence of a record, we presume the evidence was sufficient to support the trial court's findings," and Mother bears the burden on appeal to show that did not occur. *See In re G.X.H.*, 627 S.W.3d at 300 (finding that the parents bore burden to bring forth record on appeal "to demonstrate the absence of evidence to support the required findings"). Mother did not move to dismiss after the March 28, 2022 dismissal date or otherwise assert that the trial court lacked jurisdiction to proceed. *See id.* at 301.

Because we conclude the trial court effectively extended the automatic dismissal date, it retained jurisdiction to render an order of termination, and we proceed to the merits of Mother's appeal. *See id.* at 298 (concluding the only reasonable interpretation of a docket entry regarding a hearing was that the trial court extended the automatic dismissal date); *In re P.Z.F.*, 651 S.W.3d 147, 153 (Tex. App.—Dallas 2021, pet. denied) ("Based on *G.X.H.*, we imply the [§] 263.401(a) findings were made on the record at the oral hearing."). We overrule Mother's first issue, and we proceed to the merits of her appeal.

## IV.  STANDARD OF REVIEW

For a trial court to terminate a parent-child relationship, there must be clear and convincing evidence that: (1) the parent's actions or omissions satisfy at least one statutory termination; and (2) termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001(b)(1), (2); *see In re E.N.C.*, 384 S.W.3d 796, 803 (Tex. 2012); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). Evidence is clear and convincing if it "will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought

10

to be established." TEX. FAM. CODE ANN. § 101.007; *In re E.N.C.*, 384 S.W.3d at 802.

Only one predicate act under § 161.001 (b)(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). To determine whether the evidence is legally sufficient to support the trial court's findings, we look at all the evidence in the light most favorable to the finding and ask whether a reasonable factfinder could have formed a firm belief or conviction the finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). We must assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence a reasonable factfinder could have disbelieved or found incredible. *Id.*

When reviewing a challenge to the factual sufficiency of the evidence, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *Id.*; *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). We determine "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth" regarding the Department's allegations. *In re. J.F.C.*, 96 S.W.3d at 266. We consider whether disputed evidence is such that "a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

## V.    ENDANGERMENT

By her second issue, Mother argues the evidence was legally and factually insufficient to support the trial court's decision to terminate her parental rights pursuant to § 161.001 (D) and (E). According to Mother, the evidence is legally and factually insufficient to support a finding that that Mother engaged in a course of conduct that endangered S.L. physically or emotionally.

### A.    Applicable Law

Section 161.001(b)(1)(D) and (E) both require a finding of endangerment.[5] *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(D), (E). "Because the evidence pertaining to subsections 161.001 (1)(D) and (E) is interrelated, we may conduct a consolidated review." *In re M.R.J.M.*, 280 S.W.3d 494, 503 (Tex. App.—Fort Worth 2009, no pet.). To "'endanger' means to expose to loss or injury; to jeopardize." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987) (internal citations omitted). The specific danger to a child's physical or emotional well-being need not be established as an independent proposition, but it may be inferred from parental misconduct. *Id.*

Pursuant to subsection D, the endangerment analysis focuses on the evidence of the child's physical environment although the environment produced by the conduct of the parents bears on the determination of whether the children's surroundings threaten their well-being. *See In re E.M.*, 494 S.W.3d 209, 221 (Tex. App.—Waco 2015, pet. denied); *see also In re J.J.M.*, No. 13-22-00131-CV, 2022 WL 3257520, at *6 (Tex. App.—

---

[5] "Allowing [§] 161.001(b)(1)(D) or (E) findings to go unreviewed on appeal when the parent has presented the issue to the court thus violates the parent's due process and due course of law rights." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam).

Corpus Christi–Edinburg Aug. 11, 2022, no pet.) (mem. op.). Subsection D "permits termination if the petitioner proves parental conduct caused the children to be placed or remain in an endangering environment*." In re J.J.M.*, 2022 WL 3257520, at *6.

> It is not necessary that the parent's conduct be directed towards the child or that the child actually be injured; rather, a child is endangered when the environment creates a potential for danger which the parent is aware of but disregards. Conduct that demonstrates awareness of an endangering environment is sufficient to show endangerment. In considering whether to terminate parental rights, the court may look at parental conduct both before and after the birth of the child. Section D permits termination based upon only a single act or omission.

*In re E.M.*, 494 S.W.3d at 221–22 (cleaned up).

Under subsection E, the relevant inquiry is whether evidence exists that the endangerment of the children's physical well-being was the direct result of the parent's conduct, including acts, omissions, or failures to act. *Id.* at 222. Either the parent's conduct or the conduct of a person with whom the parent knowingly leaves the children that endangers their physical or emotional well-being is sufficient. *Id.* ("It is not necessary, however, that the parent's conduct be directed at the child or that the child actually suffer injury."). In either instance, it is thus the direct result of the parent's conduct that results in the termination of the parental rights. *Id.*

## B. Discussion

Mother admitted that it would be concerning for S.L. to be in a home with drug users, yet Mother repeatedly tested positive for methamphetamines and amphetamines throughout her involvement with the Department for over a decade, and admitted that she tested positive for drugs while she was pregnant with S.L. *See In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009) ("We accordingly agree that a parent's use of narcotics and its effect

13

on his or her ability to parent may qualify as an endangering course of conduct."); *see In re M.E.-M.N.*, 342 S.W.3d 254, 263 (Tex. App.—Fort Worth 2011, pet. denied) ("[A] parent's decision to engage in illegal drug use during the pendency of a termination suit, when the parent is at risk of losing a child, supports a finding that the parent engaged in conduct that endangered the child's physical or emotional well-being."). Additionally, Mother failed to comply with court-ordered drug tests and went through periods of noncompliance. Drug use and its effect on a parent's ability to parent may establish an endangering course of conduct. *See Cervantes-Peterson v. Tex. Dep't of Family & Protective Servs.*, 221 S.W.3d 244, 253 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (noting that mother's continued narcotics use after child's removal and in face of drug testing, jeopardized her relationship with her child).

Mother did not allow the Department access to her apartment so that they could conduct the requisite home evaluations required for reunification. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) (explaining that conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being). The Department engaged a special investigator, but Mother "would never open the door."

Furthermore, Mother refused to provide the Department with S.L.'s location; caused the Department to spend months attempting to locate S.L.; and allowed S.L. to reside in a home with drug users, stating that V.R. had "partial custody." In her brief, Mother stated that V.R. "welcomed [S.L.] with open-arms into his home." However, there was evidence that V.R. was uncooperative in the Department's investigation, did not allow

the Department access to his home, and did not provide any information or comply with any efforts of the Department. There was also evidence that V.R. and his wife tested positive for cocaine, marijuana, and benzodiazepines. Though Mother denied she knew that V.R. and his spouse were drug users,[6] the trial court could have disbelieved Mother's testimony. *See In re C.V.L.*, 591 S.W.3d 734, 751 (Tex. App.—Dallas 2019, pet. denied) (providing that evidence that a parent allowed a child to be around persons using drugs can support a conclusion that the child's surroundings endanger the child's physical or emotional well-being); *see also In re J.J.*, No. 07-13-00117-CV, 2013 WL 4711542, at *4 (Tex. App.—Amarillo Aug. 29, 2013, no pet.) (mem. op.) ("[A] parent's decision to leave a child in the care of a known drug user is relevant to the predicate acts or omissions outlined in subsections (D) and (E).").

The Department alleged multiple instances of neglect beginning in 2010 as Mother has an extensive history with the Department. In fact, all of Mother's prior children have been removed from Mother's care, and, according to the Department, the trial court ordered Mother not to have contact with her other children "due to it harming the welfare and safety of the children." *See In re C.J.O.*, 325 S.W.3d 261, 265 (Tex. App.—Eastland 2010, pet. denied) ("If a parent abuses or neglects . . . other children, that conduct can be used to support a finding of endangerment even against a child who was not yet born at the time of the conduct."); *see also A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.) (providing that a factfinder may infer

---

[6] Mother testified, "[I]t came to a surprise that all of us came out with the same drug, supposedly, when I never even took a drug test for the Department."

from a parent's past conduct of endangering the well-being of the children that similar conduct will recur in the future); *In re E.A.*, No. 13-06-503-CV, 2007 WL 2471459, at *8 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2007, no pet.) (mem. op.) ("Because there is evidence that appellant's past actions were unsuitable, the trial court could have inferred that similar unsuitable conduct could recur in the future if the children are returned to appellant.").

According to Mother, the evidence is legally and factually insufficient to support a finding that that Mother engaged in a course of conduct that endangered S.L. physically or emotionally because "[t]here was no evidence presented from law enforcement or psychologists or doctors that Mo[ther] posed a danger" to S.L. "or was engaged in any such dangerous behavior." However, the evidence presented belies such a conclusion. Furthermore, Mother cites no authority that evidence of endangerment must be presented through the testimony of law enforcement, psychologists, or doctors, and we have found none. *See* TEX. R. APP. P. 38.1(i). Nonetheless, the statute does not require that evidence of endangerment come from a specific source. *Cf.* TEX. FAM. CODE ANN. § 161.001. A parent's conduct that subjects a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *In re R.W.*, 129 S.W.3d at 739. There was evidence of such problematic conduct by Mother, as discussed *supra*. *See Cervantes-Peterson*, 221 S.W.3d at 253 ("The specific danger to the child's well-being may be inferred from parental misconduct standing alone.").

Burger concluded that allegations of neglectful supervision against Mother was ultimately substantiated, as indicated in her "reason to believe" finding. The trial court was

16

also privy to evidence of Mother's noncompliance with her family plan of service, wherein Mother failed to: maintain a safe and stable home for S.L.; allow the Department access to her current residency to conduct assessments; attend all scheduled visits with S.L. and all court hearings; provide the Department with proof of a stable job and income; complete parenting classes; complete drug counseling; attend and successfully complete drug and alcohol assessments; submit to random drug tests; and obtain clean drug tests. *See In re R.F.*, 115 S.W.3d 804, 811 (Tex. App.—Dallas 2003, no pet.) (providing that as part of the endangering-conduct analysis, a court may consider a parent's failure to complete a service plan). The trial court was the sole judge of the witnesses' credibility and was free to believe the Department's evidence and to disbelieve Mother's explanations. *See In re J.O.A.*, 283 S.W.3d at 346.

Viewing the evidence in the light most favorable to the trial court's finding, we conclude that the evidence is sufficient to support the trial court's findings that Mother knowingly placed or knowingly allowed S.L. to remain in conditions or surroundings that endanger S.L. and engaged in conduct or knowingly placed S.L. with persons who engaged in conduct that endangers S.L. *See* TEX. FAM. CODE ANN. § 161.001 (b)(1)(D), (E). Moreover, viewing all the evidence, we conclude that the evidence is such that a factfinder could reasonably form "a firm belief or conviction about the truth" regarding the Department's allegations. *See In re. J.F.C.*, 96 S.W.3d at 266. Accordingly, the evidence is legally and factually sufficient to support the judgment. We overrule Mother's second issue. Because we find that the evidence is sufficient under subsections D and E, we need not address Mother's issues challenging the remaining statutory grounds on appeal.

17

*See In re A.V.*, 113 S.W.3d at 362 (providing that only one predicate act under § 161.001(b)(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest).

## VI.    BEST INTEREST

By her third issue, Mother argues there is legally and factually insufficient evidence supporting the trial court's finding of best interest.

### A.    Applicable Law

When considering the best interest of a child, we recognize there is a strong presumption that the child's best interest is served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). However, we also presume that "prompt and permanent placement of the child in a safe environment" is in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).

In determining whether a parent is willing and able to provide the child with a safe environment, we consider the factors set forth in the family code as well as the *Holley* factors.[7] *See id.* § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976). These factors are not exhaustive. *In re C.H.*, 89 S.W.3d at 27. "The absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest,

---

[7] These factors include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *Id.* In analyzing these factors, we focus "on the best interest of the child, not the best interest of the parent." *Dupree v. Tex. Dep't of Protective & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ).

Evidence that proves one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *In re C.H.*, 89 S.W.3d at 28. "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). "A trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." *Id.*

## B. Children's Desires, Ages, and Vulnerabilities

"When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (quoting *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). Although S.L. is too young to articulate his desires, there was evidence that Mother's other children "expressed their concerns about not wanting her around and not wanting to visit with her." *See id.* Foster mother testified that S.L. is doing wonderful in her care, and he his bonding with the family and his other siblings. *See In re C.N.S.*, 105 S.W.3d 104, 106 (Tex. App.—Waco 2003, no pet.) (considering the evidence of a lack of an emotional bond between the children and the parent as relevant in

19

determining the child's desires). Foster mother is currently working on S.L.'s speech. She is making notes of the new words S.L. has learned since being placed with her family. Although S.L. has had a short time with Foster mother, he is doing well with his foster family while Mother has not maintained significant contact with S.L. *See* TEX. FAM. CODE ANN. § 263.307(b)(12)(F) (providing that court may consider whether the family understands the child's needs and capabilities); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (considering evidence of a child's bond with foster mother in the best-interest analysis). These factors weigh in favor of termination.

## C. Children's Present and Future Emotional and Physical Needs, Plans for the Children, and Parental Abilities

"The need for permanence is the paramount consideration for the child's present and future physical and emotional needs." *In re S.J.R.-Z.*, 537 S.W.3d at 693 (quoting *Dupree*, 907 S.W.2d at 87). "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." TEX. FAM. CODE ANN. § 263.307(a). "While it is true that proof of acts or omissions under [§] 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues." *In re C.H.*, 89 S.W.3d at 28; *see In re D.L.N.*, 958 S.W.2d 934, 941 (Tex. App.—Waco 1997, pet. denied) (holding that a factfinder may infer that past conduct endangering the well-being of a child may recur in the future if the child is returned to the parent).

Here, Mother was residing in a temporary home, was doing "odd jobs," and she had no plan for S.L. going forward. Moreover, there was evidence that Mother was hostile

with the Department throughout the entire process, calling them "liars" and "bitches."[8] *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (providing that Mother's willingness "to cooperate with and facilitate an appropriate agency's close supervision" is a relevant consideration in the best interest analysis). Thus, Mother's unwillingness to cooperate with the Department because she "disagree[s] with what they're saying," demonstrates her own developmental immaturity, indicating an inability to prioritize reunification with S.L. and effect personal change for the betterment of her child. *See id.* § 263.307(b)(11) (providing that "the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time" is a relevant consideration in the best interest determination). Additionally, demonstrative of Mother's inability to provide S.L. with a safe and drug-free home was her testified-to "unaware[ness]" that she had missed several required drug tests. *See id.* § 263.307(b)(12). Mother also suggests that because S.L. is an infant and "a little person," H.H. should be able to care for him along with her four other minor children in H.H.'s two-bedroom apartment. This demonstrates Mother's lack of understanding of S.L.'s basic needs. *See id.* These factors favor termination.

## D. History of Substance Abuse

An additional factor to consider in a best interest determination is whether there is a history of substance abuse by the child's family or others who have access to the child's home. *See id.* § 263.307(b)(7). Mother admitted that she was using drugs when she was

---

[8] In closing arguments, the Department asked the trial court to consider Mother's demeanor and attitude at trial where mother was "laughing and mocking" the Department while she was being questioned.

pregnant with S.L. and that she subsequently tested positive during the pendency of her cases with the Department. *See In re J.M.T.*, 519 S.W.3d at 269 (concluding "[p]arental drug abuse reflects poor judgment," and is a relevant consideration in the best interest determination); *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.) ("A mother's use of drugs during pregnancy may amount to conduct that endangers the physical and emotional well-being of the child."). The Department presented evidence that Mother failed her drug tests on multiple occasions and that she left her child with V.R. and S.V. who both tested positive for narcotics. These factors weigh in favor of termination.

## E. Programs Available and Parent's Acts, Omissions, and Willingness to Accept Help

There was evidence that after removal, Mother tested positive for drugs, failed to submit to drug tests, and failed to complete her required court-ordered services. *See In re K-A.B.M.*, 551 S.W.3d 275, 287 (Tex. App.—El Paso 2018, no pet.) (providing that a parent's failure to submit to a drug test can be considered a positive result). Mother was unsuccessfully discharged from Gulf Coast Services. As the factfinder, the trial court may have inferred from Mother's failure to take the initiative to complete the services required to regain possession S.L. that she does not have the ability to motivate herself to seek out available resources needed now or in the future. *See In re J.M.T.*, 519 S.W.3d at 267.

The Department presented evidence that Mother was uncooperative and disengaged from her services for months at a time, demonstrating that Mother was not

willing to interact with the Department.[9] *See* TEX. FAM. CODE ANN. § 263.307(b)(10) (stating that willingness and ability "to cooperate with and facilitate an appropriate agency's close supervision" is relevant consideration in deciding whether parent can provide child with safe environment); *Wilson v. State*, 116 S.W.3d 923, 930 (Tex. App.—Dallas 2003, no pet.) (providing that a parent's lack of motivation in improving parenting skills is evidence to support a finding that termination is in the child's best interest). Although Mother recently started attending virtual visitation with S.L., there was evidence that Mother also failed to attend visitation with S.L., and her visitation was further suspended for months because she refused to cooperate with the Department and the trial court.

Burger testified that Mother demonstrated an inability to provide S.L. with a safe environment because she was living in a temporary apartment with an unnamed person, and she was planning to move soon. In addition, the evidence showed that Mother did not have stable employment or a plan to care for S.L. From this evidence the trial court could have reasonably found that Mother is unable to provide for S.L.'s emotional and physical needs. *See In re C.A.J.*, 122 S.W.3d 888, 894 (Tex. App.—Fort Worth 2003, no pet.) ("Without stability, income, or a home, [a parent] is unable to provide for the child's emotional and physical needs."). These factors weigh in favor of termination.

## F.    Conclusion

Having reviewed the record and considered the evidence in the appropriate light for each standard of review, we conclude the trial court could have formed a firm belief or

---

[9] Mother attributed this to not having a phone, but she admitted she was available through e-mail.

conviction that termination of Mother's parental rights is in S.L.'s best interest. *See* TEX. FAM. CODE ANN. § 161.001(b)(2). Accordingly, we hold the evidence is legally and factually sufficient to support the trial court's best interest findings. We overrule Mother's third issue.

## VII. CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Justice

Delivered and filed on the
8th day of June, 2023.

24